# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | | |
|---|---|---|
| Natasha Carter, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | 2:20-cv-00172-RWS-JCF |
| v. | ) | |
| | ) | |
| Southern Property Management | ) | **COMPLAINT WITH** |
| Of North Georgia, LLC, and Lynn | ) | **JURY TRIAL DEMAND** |
| Tipton, An Individual, | ) | |
| | ) | |
| Defendants | | |

## PRELIMINARY STATEMENT

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692 et seq. and the Georgia Fair Business Practices Act, (GFBPA) O.C.G.A. 10-1-390 et seq.

## PARTIES

1. Plaintiff, Natasha Carter, is a natural person who resides in Hall County, Georgia.

1

2. Defendant, Southern Property Management of North Georgia, LLC, (hereinafter Southern Property) is a limited liability corporation formed under the laws of the State of Georgia. Southern Property may be served with process via its registered agent, Lynn Tipton, 4211 Mundy Mill Place, Suite C, Oakwood, Georgia 30566.

3. Defendant, Lynn Tipton, herein after "Tipton", is an individual residing in Hall County, Georgia and can be served at 4211 Mundy Mill Place, Suite C, Oakwood, Georgia 30566

4. Defendant Tipton is employed by Southern Property as its Manager and Chief Executive Officer.

5. Tipton has specialized training in the review of delinquent accounts and the tenets of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq.

6. Tipton takes an active role in training and overseeing the conduct of collection agents in the employ of Southern Property.

7. Tipton personally approved all acts complained of herein and took an active role in the institution and completion of each.

8. Tipton was personally involved in and approved abusive and unlawful behavior directed at the Plaintiff in furtherance of Southern Property's efforts to collect a consumer debt.

9. As described herein, Tipton acted with intent to harass, intimidate, and humiliate the Plaintiff so as to extract as much money from her as quickly as she could.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Defendant because, inter alia, Defendants frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

12. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district.

13. Pursuant to LR 3.1B(3), venue is proper in the Gainesville Division because the Defendant, Southern Property, maintains a Registered Agent in Hall County which is in the Gainesville Division.

## FACTUAL ALLEGATIONS

14. Plaintiff is allegedly obligated to pay a consumer debt arising out of homeowner's association fee and is therefore, a "consumer", as that term is defined by 15 U.S.C. § 1692a(3).

15. Defendant, Southern Property, markets itself as a property management company. As part of its business practices and services offered, it collects past due rents and/or fees on behalf of its clients.

16. Defendant uses interstate commerce and/or mail in its business in the collection of consumer debts.

17. Defendant is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

18. On January 22, 2018, the Plaintiff filed a petition of Bankruptcy under Chapter 13 of the Bankruptcy Code in the Northern District of Georgia, Gainesville Division. Her case was assigned number 18-20112.

19. In her schedule of creditors, the Plaintiff listed the homeowner's association for her neighborhood through its managing agent, Southern Properties Management. Plaintiff listed the address as 4211 Munday Hill Place, Suite C, Oakwood, Georgia 30566. She also estimated the amount of the homeowner's association's claim as $1,722.93.

20. Notice of the Plaintiff's Bankruptcy filing and its inclusion as a creditor was served upon the Defendant by the Bankruptcy Noticing Center on January 25, 2018. A copy of the Certificate of Notice, highlighted for ease of reference, is filed herewith as Exhibit 1.

21. The United States Bankruptcy Code provides that the filing of a Bankruptcy petition operates as a stay, applicable to all entities, of the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other actionable proceeding against the debtor that was or could have been commenced before the commencement of the case under the Bankruptcy Code, or to recover a claim against the debtor that arose before the commencement of the case under this title. This is commonly referred to as the "automatic stay" and is set forth in 11 U.S.C. Section 362(a)(1).

22. The Plaintiff's Chapter 13 plan was confirmed on December 12, 2018.

23. In January 2019, the Chapter 13 trustee began making payments from the funds submitted by the Plaintiff to her creditors, including Southern Property on behalf of its principal, Rosewood Homeowner's Association.

24. Since January 2019 and through July 2020 Southern Property has received dispersals from the Chapter 13 trustee every month and totaling $377.64.

25. In August 2018, the Plaintiff emailed the Defendant regarding her yearly HOA dues which Defendant was collecting for previous year. The Plaintiff specifically asked how much was owed. The Plaintiff also stated that she had not received a statement and asked about the due date.

26. The Defendant responded by email on August 9, 2018, advising the Plaintiff that the statements had been mailed in April of 2018 with a due date of May 30. The email went on to inform the Plaintiff that her current account balance was $1,909.22. On that same day, the Plaintiff replied asking that another statement be sent to her and advising the Defendant that she was only responsible for direct payment of the current year as the prior amount had been included in her Bankruptcy case. The Defendant responded by forwarding to her a current statement.

27. The Plaintiff asked for additional documentation from Defendant, Southern Property, related to the HOA dues. Her email was answered by Defendant Tipton, again on August 9, who advised her that those items had been sent to her attorney and, after insulting the Plaintiff, advised that neither Defendant would respond to any more emails from the Plaintiff.

28. On July 1, 2019, Plaintiff's bankruptcy counsel emailed the Defendants to advise them that the Plaintiff had paid $100 toward the current (2019) HOA dues and would pay any remaining balance over the next several weeks. The Defendants

replied, also on July 1, informing Plaintiff's bankruptcy counsel that the Plaintiff must have a "payment plan" with the HOA and that she cannot simply make payments.

29. The Plaintiff's Bankruptcy counsel attempted to comply with Defendant's request and asked for the balance information. The Defendants then represented to Plaintiff's Bankruptcy counsel that, "She will need to enter into a formal agreement with us. We are about to take her to court, so we must have this."

30. Plaintiff's Bankruptcy counsel responded, on July 2, 2019 advising the Defendants that they cannot institute a court action without obtaining a lifting of the automatic stay (as provided by 11 U.S.C. 362(a)).

31. The Defendants replied and specifically asked if the Plaintiff was in Bankruptcy, to which Plaintiff's Bankruptcy counsel advised that she was and directed to the Plaintiff's case number contained in the caption of the email. She also provided a notice of the filing and service. The Defendants responded via email stating, "She did not include the HOA, SO we can take to court!"

32. The Plaintiff's Bankruptcy counsel responded by suggesting that the Defendants consult with an attorney. She advised that the Plaintiff did indeed include the HOA as a creditor and that, regardless, Defendants must obtain relief of the automatic stay prior to instituting any State Court action.

33.    The Defendants responded by pointing out that the name of the creditor was in the Plaintiff's Bankruptcy schedules was the Defendant, Southern Property, as opposed to the HOA.

34.    Rather than debate the nuances of actual notice provided to both Defendants, Plaintiff's Bankruptcy counsel filed a request for change of address on July 3, 2019 designating the name of the actual creditor as Rosewood Homeowner's Association, Inc. and showing the prior address as 4211 Munday Mill Place, Suite C, Oakwood, Georgia 30566.  The new notice specifically designated the Defendant, Southern Property, as the agent for Rosewood Homeowner's Association, Inc.  A copy of this notice as filed with the court is filed herewith as Exhibit 3.

35.    Despite having actual knowledge of the Plaintiff's Bankruptcy, and having received over $377 in dispersals from the Chapter 13 trustee, Defendants filed a lawsuit against the Plaintiff in Hall County Magistrate Court on March 24, 2020 on behalf of Rosewood Homeowner's Association.  Defendant, Tipton, signed the complaint as Rosewood's agent and the complaint seeks a judgment of $1,608.75 for the dues arrearage and interest of $104.00.

36.    The amount claimed by the homeowner's association, through its agents, the Defendants, is the amount that was due and owing prior to the filing of the Plaintiff's Bankruptcy case and is included in her schedule of debts.  A copy of

the lawsuit filed by the Defendants along with the sheriff's entry of service is filed herewith as Exhibit 4.

37. The claim for damages filed by the Defendants seeks to recover sums already received in distributions from the Chapter 13 trustee.

38. The Defendants have knowingly and intentionally thwarted the Plaintiff's attempts to reorganize financially as is her right under the law and have violated the automatic stay.

39. The Defendants made numerous objectively false and misleading representations to the Magistrate Court of Hall County and to the Plaintiff including, but not limited to, that they are legally entitled to seek monetary relief on behalf of their principal, Rosewood Homeowner's Association and the amount they are entitled to collect.

## INJURIES-IN-FACT

40. The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

41. An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).

42. Violation of statutory rights are not a "hypothetical or uncertain" injury, but one "that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *McCamis*, at 4, citing *Church*, at 3.

43. Defendant is subjecting Plaintiff to false, deceptive, unfair, and unconscionable means to collect the debt.

44. Defendants acts and omissions caused particularized harm to the Plaintiff in that she has incurred legal costs to defend the unlawful action filed in state court and has otherwise had her lawful attempt to restructure her finances hindered.

45. Accordingly, through the violation of Plaintiffs' statutorily created rights under the FDCPA, Plaintiffs have suffered an injury-in-fact sufficient to establish Article III standing.

## DAMAGES

46. As a result of the Defendant's actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

a.) Being subjected to false, deceptive, unfair, and unconscionable debt collection practices;

b.) Uncompensated time expended away from work and/or activities of daily living, to confer with counsel regarding the Defendant's collection efforts; and,

c.) Anxiety and worry caused by concern that Plaintiff was being called upon to pay an improper and duplicative claim;

d.) The incursion of legal fees to defend against the Defendant's state court action; and

e.) Anxiety and humiliation attendant with the filing and service of the Defendants' complaint. The anxiety and worry experienced by the Plaintiff was sufficient to negatively affect her demeanor, her ability to engage in daily activities, resulted in sleeplessness, and adversely affected her relationships with others.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et. seq.

47. Plaintiff incorporates by reference paragraphs 1 through 46 as though fully stated herein.

### *Violations of 15 U.SC. § 1692e and its subparts*

48. 15 U.S.C. § 1692e specifically prohibits the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt.

49. The use of "or" in § 1692e means a representation violates the FDCPA if it is false or deceptive or misleading. *Bourff v. Rubin Lublin*, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012).

50. The standard in determining the nature of any such representation is that of the "least sophisticated consumer." Its purpose is to protect "naive consumers" with a minimal understanding of personal finance and debt collection. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).

51. Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence," *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at 12-13 (11th Cir. Nov. 12, 2019), quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)

52. A false representation in connection with the collection of a debt is sufficient to violate the FDCPA, even if it is not alleged or proven to be misleading or deceptive.

53. The Defendants have taken action in furtherance of the collection of a consumer debt that they are not legally permitted to take in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

54. The Defendants' representations to the state court and the Plaintiff as to their right to pursue a judgment against the Plaintiff are objectively false and in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10).

55. The Defendants' representations to the state court and the Plaintiff as to amount of the claim are objectively false and in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10).

## TRIAL BY JURY

56. Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.) Plaintiff's actual damages;

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

c.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k; and

d.)     Such other and further relief as may be just and proper.

Respectfully submitted this 22nd  day of July, 2020.

**BERRY & ASSOCIATES**

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3300
Fax (404) 235-3333

*Plaintiff's Attorney*